UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AGROLABS, INC.,<br><br>     **Plaintiff,**<br><br>v.<br><br>INNOVATIVE MOLDING, INC. and THE PACKAGING DESIGN GROUP, INC.<br><br>     **Defendants.** | Civ. No. 2:13-6169 (KM) (MCA)<br><br>**OPINION** |

**MCNULTY, U.S.D.J.:**

Defendant Innovative Molding, Inc. ("Innovative") has moved to dismiss Counts 1-3 of the Complaint ("Compl.," Docket No. 1). (Docket No. 13, "Innovative MTD"). Defendant The Packaging Design Group, Inc. ("PDG") also moves to dismiss Count 6, the negligence claim brought against it. (Docket No. 21, "PDG MTD"). Plaintiff, AgroLabs, Inc. ("AgroLabs") has responded.

For the reasons set forth below, PDG's motion to dismiss is granted and Innovative's motion to dismiss in granted in part and denied in part. Both negligence claims will be dismissed (Counts 3 and 6). The remaining claims survive.

I.    BACKGROUND

    A. Factual Averments[1] and Procedural History

Plaintiff AgroLabs is a company organized under New Jersey law with its principal place of business in Hillside, New Jersey. Compl. ¶ 9. The company is engaged in the manufacturing, sale, and marketing of nutritional supplements

---

[1]    The allegations of the Complaint have not yet been tested by any fact finder. Solely for the purpose of analyzing the Rule 12(b)(6) motions, the Court, as it must, assumes their truth.

1

and health care products. Compl. ¶ 2. Defendants Innovative Molding, Inc. ("Innovative") is a corporation organized under California law with its principal place of business in Rohnert Park, California. Compl. ¶ 10. The Packaging Design Group, Inc. ("PDG") is a corporation organized under Maryland law with its principal place of business in Hunt Valley, Maryland. Compl. ¶ 11.

AgroLabs manufactured Wheatgrass and Peaceful products, which are sold in liquid form. Compl. ¶¶ 4, 21. These products were toll manufactured by Flavours, Inc., a non-party. Innovative and PDG are "manufacturers of plastic closure packaging products for the chemical, pharmaceutical and food and beverage industries." Compl. ¶ 3. Between April and August 2012, PDG contracted with AgroLabs to manufacture bottles. At the same time, Innovative contracted with AgroLabs to manufacture of bottle caps. AgroLabs' Wheatgrass and Peaceful products were sold in bottles manufactured by PDG, sealed with caps manufactured by Innovative. Compl. ¶ 21.

AgroLabs learned that customers had found that the capped bottles leaked, allowing air to penetrate. This problem, says AgroLabs, was attributable to defective bottles, defective caps, or both. Compl. ¶ 22.

AgroLabs commissioned a laboratory analysis of the bottles and caps. This analysis "confirmed the defective nature of the bottle and/or caps manufactured by the Defendants, demonstrating that the sealing problems resulted from loose caps, bad seals and leakers." Compl. ¶23.

As a result of the defective packaging, many of Plaintiff's products were recalled. That recall resulted in lost profits in excess of $350,000, consequential damages related to the shipment of the products, and loss of goodwill with longtime customers. Compl. ¶¶ 6, 7, 24, 25.

On November 17, 2013, Plaintiff filed a Complaint in this Court alleging the following six claims: (1) Breach of Contract against Innovative; (2) Breach of Implied Warranty against Innovative; (3) Negligence against Innovative; (4) Breach of Contract against PDG; (5) Breach of Implied Warranty against PDG; and (6) Negligence against PDG.

### B. The Pending Motions

Innovative now moves to dismiss all claims brought against it (Counts 1–3) pursuant to Fed. R. Civ. P 12(b)(6). As to the breach of contract claim, Innovative argues that AgroLabs fails to allege how the bottle caps delivered did not conform to the specifications of the purchase and sales orders or how the

"defective bottle caps" caused the bottles to leak. Innovative adds that the laboratory analysis cited in the Complaint found that the "root cause of the bottle/Closure defect was due to the incorrect bottle neck finish T and E dimension" and that, after modification of the bottles, AgroLabs sealed the bottles with the Innovative caps "without further issues." Docket No. 13-4 ("Laboratory Report"). Therefore, Innovative concludes, the breach of contract claim cannot survive. As to the breach of implied warranty claim, Innovative argues that the Complaint fails to identify any precise specification or particular purpose. Finally, Innovative argues that the negligence claim must be dismissed because commercial parties cannot seek purely economic damages due to a product defect.

PDG joins in Innovative's arguments as to negligence, and, invoking the economic loss doctrine, moves for dismissal of Count 6, the negligence claim brought against it by AgroLabs. Docket No. 21. PDG denies the validity of the warranty claims brought against it, but does not move for their dismissal.

## II. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a

3

'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Analysis[2]

#### 1. Negligence Claims (Counts 3 and 4)

The economic loss doctrine prohibits a commercial product purchaser from seeking purely economic damages through a negligence claim. Innovative and PDG submit that the negligence claims brought against them (Counts 3 and 6) are precluded under the economic loss doctrine, because AgroLabs seeks only monetary damages for harm caused by alleged product defects.

AgroLabs responds that it is not merely seeking the benefit of the bargain, *e.g.*, a refund of the price of the defective caps. It is seeking damages more consequential in nature, stemming from the product recalls and loss of goodwill. In AgroLabs' view, the economic loss doctrine bars only negligence claims for damage or loss relating to the product itself. Docket No. 25 at 7.

I agree with Innovative and PDG that the negligence claims are precluded by the economic loss doctrine.

The New Jersey Supreme Court first adopted the economic loss doctrine in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985). In *Spring Motors*, a vehicle restorer sought damages for repair costs, lost profits, and decreased market value due to issues with certain vehicles' transmissions. The court found that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the U.C.C., but not in strict liability or negligence." *Id.* at 561, 663. *The Spring Motors* court reasoned that "the weight of authority supports the proposition that economic expectations that are protected by the U.C.C. are not

---

[2]  AgroLabs has not raised any choice of law issues in this diversity action. Innovative submits that the Court need not conduct a choice of law analysis because there is no conflict between the laws on New Jersey and California with respect to breach of contract, breach of implied contract of fitness for a particular purpose, and negligence. Innovative MTD at 6. PDG. PDG likewise raises no meaningful conflicts and submits that, in the event that Maryland law were to apply, the result would be no different. Seeing no conflict, this Court will apply New Jersey law for purposes of this motion.

4

entitled to supplemental protection by negligence principles." In the Court's view, the U.C.C. is a "comprehensive system for determining the rights and duties of buyers and sellers with respect to contracts for the sale of goods." *Id.* at 565, 665. Elaborating in a later case, the New Jersey Supreme Court explained that "if the essence of a claim was that there was something wrong with the product itself, the buyer's remedies were found in the U.C.C. because the claim was based, fundamentally, on the contract principles embodied there." *Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 296, 8 A.3d 766, 771-72 (2010).

In 1987, the New Jersey Legislature codified the *Spring Motors* ruling by adopting the Product Liability Act. *See* N.J.S.A. § 2A:58C-1 (defining harm in a products liability action as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph"). *See Dean*, 204 N.J. at 295, 8 A.3d at 771 (explaining that the "definition of harm" as defined in the Product Liability Act "was not a new one, for it represented a codification of the economic loss rule").

As AgroLabs points out, the economic loss doctrine does have limitations. Thus, for example, when a defective product causes personal injury or damage to other property, the doctrine may be inapplicable. *See Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 632, 695 A.2d 264, 270 (1997); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 505 (D.N.J. 1999); *Dean*, 204 N.J. at 298, 8 A.3d at 773. The doctrine may also be inapplicable to claims of fraud and misrepresentation, s*ee, e.g., Coastal Grp., Inc. v. Dryvit Sys., Inc.*, 274 N.J. Super. 171, 177, 643 A.2d 649, 652 (App. Div. 1994). Those exceptions, however, do not apply to the facts as pleaded in this Complaint.

AgroLabs suggests that the economic loss doctrine bars only claims to replace the value of the defective product itself. Ample case law establishes that the economic loss doctrine also bars claims for indirect, consequential damages, such as lost profits and loss of customer goodwill. Here, AgroLabs seeks direct and consequential damages resulting from the alleged "leakers" and alleges a loss in excess of $350,000 resulting from the defective packaging. Docket No. 25 at 2. Both of these forms of damages fall under the doctrine. *See Spring Motors Distributors, Inc.*, 98 N.J. at 566, 489 A.2d at 665 (citations omitted) ("Economic loss can take the form of either direct or consequential damages. A direct economic loss includes the loss of the benefit of the bargain, *i.e.,* the difference between the value of the product as represented and its value in its defective

condition. Consequential economic loss includes such indirect losses as lost profits.").

Where a "product fails to fulfill a purchaser's economic expectations, contract principles, particularly as implemented by the U.C.C., provide a more appropriate analytical framework" than negligence law. *Alloway*, 149 N.J. at 628, 695 A.2d at 268 (citations omitted). AgroLabs' complaint alleges the purchase of a defective product (or products) resulting in economic loss. AgroLabs does not allege collateral harm to other property, personal injury, or fraud. In short, contract law governs. Pursuant to the economic harms doctrine, the negligence claims (Count 3 and Count 6) will be dismissed.

### 2. Contract Claim against Innovative (Count 1)

I find that the Count 1 contract claim against Innovative is sufficiently alleged. In this respect, the motion to dismiss is denied.[3]

Under New Jersey law, to establish a breach of contract claim, "a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).

AgroLabs alleges that, in or about April of 2012, AgroLabs entered into a contract with Innovative Molding for the purchase of bottle caps to seal Plaintiff's product. Compl. ¶ 27. This contract consisted of a purchase order from AgroLabs to Innovative to manufacture the bottle caps "per Plaintiff's specifications, and acceptance by Innovative of the order." Compl. ¶ 28. Innovative allegedly breached the contract by providing "defective bottle caps that did not conform to the contractual specifications requested by Plaintiff." Compl. ¶ 29. The defect resulted in leaking bottles and damages in the amount of $350,000. Compl. ¶ 30-31. AgroLabs commissioned a laboratory analysis of the defective products that "confirmed the defective nature of the bottle and/or bottle caps

---

[3] In addition to moving to dismiss the negligence claim brought against it, PDG has also filed opposition to Innovative's motion to dismiss the contract claims. PDG lacks standing to challenge Innovative's motion to dismiss.

manufactured by Defendants, demonstrating that the sealing problem resulted from 'loose caps, bad seals and leakers.'" Compl. ¶ 23.[4]

It is true that the Laboratory Report states that the "*root* cause of the bottle/Closure defect was due to the incorrect bottle neck finish T and E dimension produced by Classic Container for Pkg Design Group." Laboratory Report at 1 (emphasis added). The report also states, however, that "there was an issue with the Cap-Closure interface" because "the closure could not be tightened to the recommended torque." *Id.* The Corrective Action suggested was to "[a]djust the neck "T and/or E" dimension on the 3 oz bottle to accommodate Innovative molding 28 mm closure." *Id.* The Report also references "[l]oose caps, bad seals and leakers." *Id.*; Compl. ¶ 23.

Drawing all reasonably inferences in favor of AgroLabs, the non-moving party, there is a plausible claim alleged. The matters raised in defense are factual in nature, and they must be asserted at a later stage.

### 3. Implied Warranty Claim against Innovative (Count 2)

I will also deny Innovative's motion to dismiss the breach of implied warranty claim (Count 2).

The U.C.C. provides for an implied warranty of merchantability, N.J.S.A. 12A:2–314, and an implied warranty of fitness for a particular purpose, N.J.S.A. 12A:2–315. The U.C.C. "states that an implied warranty of merchantability ensures that goods sold are 'fit for the ordinary purposes for which such goods are used.'" *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011) (quoting N.J. Stat. Ann. § 12A:2–314(f)). In regard to the implied warranty

---

[4] Innovative argues that, because the laboratory analysis report is cited and relied on in the Complaint, the Court can properly consider it. I agree. *See, e.g., City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). The Third Circuit, noting that ordinarily a motion to dismiss addresses the face of the complaint, has held that a court may nevertheless consider a document integral to or explicitly relied upon in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 (3d Cir. 1993) *Burlington* explained that where the plaintiff has relied on a document in framing the complaint, it cannot be said that plaintiff lacks notice of it. 114 F.3d at 146.

of fitness for a particular purpose, a plaintiff must establish that "(1) The seller must have reason to know the buyer's particular purpose"; "(2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods"; and "(3) The buyer must, in fact, rely upon the seller's skill or judgment." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 92 (3d Cir. 1983) (citation omitted).

Innovative submits that AgroLabs merely recites the elements of an implied warranty claim (the same under both New Jersey and California law), without any factual allegations "from which to discern the nature of either its purported 'precise specifications' or its reliance on Innovative Molding." Innovative MTD at 8. Further, it argues that AgroLabs has not alleged that it used the bottle caps for anything other than their ordinary purpose.

The Complaint alleges that "Innovative was aware of Plaintiff's intended use for the bottles [presumably this is meant to say caps] manufactured by Innovative, as they were ordered specifically to conform to Plaintiff's precise specifications." Compl. ¶ 36. The Complaint further alleges that "Plaintiff relied on Innovative's skill and judgment in manufacturing the bottle caps to conform to Plaintiff's specifications," but that the defective caps "did not conform to Plaintiff's specifications and were not suitable for Plaintiff's intended use." *Id.* ¶¶ 37, 38.

It is not altogether clear whether AgroLabs is claiming a breach of the implied warranty of merchantability or of fitness for a particular purpose. It is clear, however, that Count 2 sufficiently alleges a claim of breach of warranty. Innovative's motion to dismiss Count 2 is therefore denied.

### III. CONCLUSION

For the foregoing reasons, PDG's motion to dismiss (Docket No. 21) is **GRANTED**. Count 6, brought against PDG, is **DISMISSED**. Innovative's motion to dismiss (Docket No. 13) is **GRANTED** in part and **DENIED** in part. Count 3, brought against Innovative, is **DISMISSED**.

An appropriate Order will be entered.

Dated: June 15, 2014

**KEVIN MCNULTY**
**United States District Judge**

8